WARD, Judge.
This is a suit for damages for personal injuries that Lei Lani Herrin received while she was riding as a guest passenger on Armand Audibert’s motorcycle after it collided with an automobile driven by Mona Lowe, but owned by Brian Lyons, now her husband. Lei Herrin sued Mona Lowe and Brian Lyons, but neither Mona Lowe nor Brian Lyons had liability insurance, consequently, Lei and her father, Freddie Her-rin, sued Herrin’s uninsured motorist carrier, State Farm Mutual Automobile Insurance Company. Armand Audibert, who was killed in the accident, did not have liability insurance for his motorcycle, and neither vehicle was insured. Neither he nor his Succession was made a party to this lawsuit. Lei and Freddie Herrin claim, however, that they are entitled to recover uninsured motorist benefits from State Farm for both uninsured vehicles.
The Trial Judge found that Armand Au-dibert, as operator of the motorcycle, and Mona Lowe, as operator of the automobile, were both,negligent, and he rendered judgment against Mona Lowe and Brian Lyons, for $119,874.00 and against State Farm as the uninsured motorist carrier of Freddie Herrin. Lei Herrin was insured under the terms of the uninsured motorist provisions of two State Farm policies held by her father. Each policy contained uninsured motorist coverage of $15,000.00, and the Trial Judge held that State Farm was liable for $30,000.00 of the $119,874.00 judgment, or $15,000.00 under the uninsured motorist provisions of each policy.
State Farm has appealed the portion of the judgment which required it to pay the benefits of Mr. Herrin’s two uninsured motorist policies. State Farm argues that the Trial Judge erred in not applying the “anti-stacking” provisions of La.R.S. 22:1406(D)(l)(c) which would limit State Farm’s obligation to $15,000.00, the coverage under only one uninsured motorist policy. The Herrins argue that “stacking” is not the issue and that they are entitled to the proceeds of each policy because Miss Herrin was injured by the negligence of two joint tortfeasors who were both uninsured. The Herrins also argue that the Trial Judge was correct when he determined that each driver was negligent and that the negligence of each driver caused the accident and the injuries to Miss Her-rin. The Herrins also contend that the Trial Judge was correct when he concluded that because the driver of each vehicle was an uninsured tortfeasor, each of Freddie Herrin’s insurance policies and their uninsured motorist provisions cover the risk of two uninsured motorists and that one policy should pay for the first uninsured motorist, and the second policy for the other.
This very plausible theory is supported by Mr. Herrin’s State Farm policies which state that uninsured motorist benefits will be paid to the insured or his legal representative who is “legally entitled to recover as damages from the owner or operator of an uninsured automobile....” Stated in other words, if State Farm agreed by its uninsured motorist coverage to stand in the shoes of a liability carrier of an uninsured, then one policy may apply to the motorcycle and the other policy to the automobile, *738 applying the uninsured motorist clause to the vehicle and not to the occurrence.
The issue, simply put, is: does the statutory exclusion prohibit stacking of two policies only when there is one tortfeasor, as Herrin contends, or does it prohibit stacking when there is only one occurrence, no matter how many vehicles or tortfeasors are uninsured, as State Farm contends?
We hold recovery from State Farm is limited to $15,000, the limit of one policy, even though Freddie Herrin and consequently, his daughter, Lei, were covered under two State Farm policies. We believe the Trial Court erred in granting recovery from both policies. La.R.S. 22:1406(D)(l)(c) prohibits increasing an uninsured motorist carrier’s liability by “stacking” policies,
(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(l), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy;
We believe the statutory scheme is to protect against “damages”, and the number of automobiles or tortfeasors causing the damage is immaterial.
As an indication of that scheme and the intent of the legislature, Section b provides:
(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured’s vehicle at the time of an accident, as agreed to be the parties and their insurers or as determined by final adjudication.
Although this does not cover the situation where there are two policies and more than one uninsured, as in this case, Section c indicates the Legislature was concerned about damages from an accident, for one occurrence. Moreover, Section c, above, speaks of “limits” of coverage, meaning, we believe, damages sustained in any one occurrence.
Although two uninsured vehicles were involved and the Trial Court found two tortfeasors, there was but one accident and one occurrence in which Miss Herrin suffered damages, and only one uninsured motorist provision is available to plaintiffs.
The judgment of the Trial Court allowing the Herrins to recover from two uninsured motorist policies, therefore, is reversed.
But we do not reverse the judgment as a whole because plaintiff is entitled to legal interest on $15,000 from judicial demand until it was paid (presumably shortly after trial).
Moreover, plaintiff is certainly entitled to all costs up until trial because of defendant’s failure to tender unconditionally the $15,000 plus interest and costs it indisputably owed (medical was more than that), rather than attempt to force plaintiff to accept $15,000 in full settlement of all claims. (Defendant apparently does not accede to the law that it must pay undisputa-ble claims rather than withhold payment unless it can settle disputed claims, notwithstanding Soniat v. State Farm Mut. A. Ins. Co., 340 So.2d 1097 (La.App. 4 Cir.1976), which awarded penalty and attorney’s fees against our defendant precisely because its offer to pay policy limits on UM coverage was conditioned on her compromising her claim on another coverage.) Nor should plaintiff have to pay the costs of appeal other than those of filing with this court and of preparing the record (but not the transcript, unnecessary because only the stacking question was at issue on appeal.)
We therefore amend the judgment to award plaintiff $15,000 plus interest from judicial demand until the date of payment (with credit for the payment of $15,000 promised shortly after trial), plus all of plaintiff’s costs; plaintiff to pay defend *739 ant’s cost of appeal save the transcript cost.
BARRY, J., concurs with written reasons.